Randy FRANCESE, Plaintiff,

v.

Donna E. SHALALA, Secretary of Health and Human Services, Defendant.

No. 93 Civ. 8700 (DAB).

United States District Court,
S.D. New York.

Sept. 5, 1995.

Charles E. Binder, Binder & Binder, Hauppauge, NY, for plaintiff.

Linda A. Riffkin, Mary Jo White, U.S. Attorney for the S.D.N.Y. New York, NY, for defendant.

## OPINION

BATTS, District Judge:

Randy Francese ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g), for judicial review of a final decision of the Secretary of Health and Human Services ("Secretary") denying his application for disability insurance benefits under Title II and of the Social Security Act ("Act"), 42 U.S.C. § 401, et seq. Both parties have moved for judgment on the pleadings pursuant to Fed. R.Civ.P. 12(c). For the reasons set forth below, the decision of the Secretary is affirmed.

*Procedural History*

Plaintiff, Randy Francese, filed an action for Social Security Disability benefits on March 31, 1992. (Tr. 69–72.)[1] Plaintiff's application was denied both initially (Tr. 83–85) and upon reconsideration. (Tr. 89–91). A hearing was held before Administrative Law Judge Hastings Morse ("ALJ") on April 15, 1993. (Tr. 37–63). In a decision dated May 17, 1993, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act ("Act"). (Tr. 15–25). On October 19, 1993, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (Tr. 5–6). This was the final decision of the Secretary. (*Id.*). Plaintiff now seeks judicial review of the Secretary's determination.

---

1. "Tr" refers to pages of the Administrative Record filed with the Court.

*Facts*

Plaintiff was born on March 8, 1952. (Tr. 41). He obtained a high school equivalency degree (G.E.D.) in 1972, and attended Westchester Community College for one semester. (Tr. 43).

From 1977 to September, 1981, Plaintiff was employed as a tractor trailer driver at a garbage company. (Tr. 46, 104, 202). From October, 1981, to October, 1991, Plaintiff was employed as a fire fighter with the Yonkers Fire Department. (*Id.*). On October 7, 1991, while working as a fire fighter, Plaintiff tripped on something, fell and then something fell on him. (Tr. 47). He alleges that because of the fall his back began to "kill him". (*Id.*). Plaintiff now alleges that his back injury is so severe that he is unable to work at all, thus qualifying him for disability insurance.

On November 14, 1991, Plaintiff was examined by Doctor Nicholas DePalma, a neurosurgeon. Dr. DePalma concluded that Plaintiff "is totally disabled for his occupation at the present time." (Tr. 195).

On February 7, 1992, Doctor Robert E. Zickel, an orthopedist, examined Plaintiff. In a letter to Oracle Management Services ("Oracle"), Plaintiff's insurance carrier, Dr. Zickel concluded that Plaintiff was unable to work as a fire fighter. He also stated, however, that Plaintiff was able to perform "sedentary or light work". (Tr. 141). On March 2, 1992, in response to an inquiry from Oracle, Dr. Zickel stated that Plaintiff was able to operate a motor vehicle. (Tr. 139).

In March 1992, Plaintiff began medical treatment with Dr. John Mazella[2] for the pain in his back. (Tr. 191). On March 5, Dr. Mazella noted Plaintiff's history of psoriatic arthritis as well as a lumbar disc protrusion, recommended physical therapy, and concluded that Plaintiff was "totally disabled." (Tr. 163). After an April 14, 1992, follow-up examination of Plaintiff, Dr. Mazella stated that he observed some improvement, but that Plaintiff was still "totally disabled". (Tr. 163, 170, 192).

On May 19, 1992, Dr. Mazella again examined the Plaintiff. He noted that Plaintiff continued to have trouble heel walking, and demonstrated dorsiflexion weakness in his right foot. (Tr. 168, 192). Dr. Mazella sent a report to Plaintiff's attorney on October 23, 1992, summarizing June 24, July 29, and September 9, 1992, examinations. In that report, he concluded that Plaintiff was in good health other than the back pain and psoriasis, for which he was receiving light treatment. Dr. Mazella concluded, however, that Plaintiff was "totally disabled for his job as a fire fighter." (Tr. 193). Further, he opined that Plaintiff was unable to sit or stand for any prolonged period and was unable to do light or sedentary work. (*Id.*).

On January 29, 1993 Plaintiff underwent arthroscopic surgery on his left knee. Dr. Mazella performed the surgery. (Tr. 185–6).

On April 12, 1993, Dr. Mazella assessed Plaintiff's Residual Functional Capacity. (Tr. 206–07). He found that Plaintiff could sit for 2 hours and stand/walk for 2 hours, frequently lift and carry 0–10 pounds, and occasionally lift and carry 10–20 pounds. (Tr. 206). Plaintiff could bend occasionally and reach and climb steps frequently. (*Id.*). Further, Plaintiff was capable of grasping, pushing/pulling, and fine manipulations with both hands and both legs. (*Id.*). Dr. Mazella stated that Plaintiff was moderately restricted from engaging in activities involving unprotected heights and moving machinery, and was moderately restricted from driving automotive equipment. (Tr. 207). He also found that Plaintiff's condition caused pain. (*Id.*).

During the period in which Plaintiff was under the care of Dr. Mazella, he was also examined by Dr. Michael Rosen, an orthopedist. Following an April 15, 1992, examination and review of earlier records, Dr. Rosen generated a report summarizing his findings. In the report, Dr. Rosen stated that Plaintiff "may attempt to return to sedentary work where he did not have to do any bending, squatting, stooping, kneeling, straining, or pushing." (Tr. 147). In a letter to Oracle, dated May 28, 1992, Dr. Rosen stated that he saw no evidence of any orthopedic limitations which would prevent Plaintiff from partici-

---

**2.** Both Plaintiff and Defendant refer to Dr. Mazella as Plaintiff's "treating physician."

pating in a functional capacity evaluation. (Tr. 142).

Additionally, Dr. David C. Pulver, an internist with Industrial Medicine Associates, evaluated Plaintiff on June 22, 1992, at Oracle's request. (Tr. 154–57). He concluded that Plaintiff had a moderate physical disability, but was capable of sedentary activities and "should be encouraged to return to work on a light-duty basis to perform light clerical duties, phone work, or similar non-strenuous activities." (Tr. 157). A subsequent evaluation provided similar results, with Dr. Pulver adding that Plaintiff was capable of walking up and down stairs. (Tr. 154).

On August 12, 1992, at Oracle's request, Dr. Henry J. Magliato, an orthopedic surgeon and colleague of Dr. Pulver, examined the Plaintiff. (Tr. 158–61). Dr. Magliato concluded that Plaintiff was capable of performing sedentary or limited capacity work at the fire department. Plaintiff was to avoid excessive amounts of bending, lifting, carrying, and prolonged sitting. Dr. Magliato also stated that Plaintiff should be allowed to get up and "perform other limited activities at the fire house." (Tr. 160). Dr. Magliato concluded, however, that Plaintiff was incapable of returning to his prior job as a fire fighter. (Tr. 160–161).

Dr. Allen Chodock, internist and rheumatologist, had been treating Plaintiff for his psoriatic arthritis since 1981. On March 16, 1993, he sent a letter to Plaintiff's attorney stating that Plaintiff had tears in the anterior horn of his right medial meniscus which made it unlikely that Plaintiff would ever be able to return to his work as a fire fighter. (Tr. 22, 181).

Subsequent to the issuance of the ALJ's decision, Plaintiff was examined by Dr. Howard Balensweig. Dr. Balensweig felt that considering Plaintiff's psoriatic arthritis and his back pain, Plaintiff was "unemployable since he can't hold a steady job" and is not competent "to have a semi-sedentary job since he can't concentrate on what he is doing." (Tr. 212).

*Discussion*

A claimant is entitled to disability benefits under the Social Security Act if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(a), 1382c(a)(3)(A). The impairment must be so severe that the person "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Secretary of Health and Human Services has established a five-step sequential process for evaluating disability insurance claims. 20 C.F.R. §§ 404.1520, 416.920. Essentially, a five step analysis of the claimant's alleged disability is to be made.

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impediment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982). The Claimant bears the burden as to the first four steps, and the Secretary bears the burden as to the last step. *Bowen v. Yuckert,* 482 U.S. 137, 146, 107 S.Ct. 2287, 2294, 96 L.Ed.2d 119 (1987).

■ A district court reviewing a denial of benefits has a limited role. The court may not determine *de novo* whether the claimant is actually disabled. Rather, the court must affirm the Secretary's final determinations so long as they are supported by substantial evidence in the factual record and are not the product of legal error. 42 U.S.C. § 405(g). *See also Dumas v. Schweiker,* 712 F.2d 1545, 1550 (2d Cir.1983) Substantial evidence means evidence that " '. . . a reasonable mind might accept as adequate to support a conclusion. . . .' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (further citations omitted). Moreover, the Secretary's determination is afforded "considerable deference" and the reviewing court should not substitute "its own judgment for that of the Secretary, even if it might have justifiably reached a different result upon a *de novo* review." *Valente v. Secretary of Health and Human Services,* 733 F.2d 1037, 1041 (2d Cir.1984). As the Second Circuit has stated:

> Congress has instructed us that the factual findings of the Secretary, if supported by substantial evidence, shall be conclusive. We would be derelict in our duties if we simply paid lip service to this rule, while shaping our holding to conform to our own interpretation of the evidence.

*Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir.1982), *cert. denied,* 459 U.S. 1212, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983).

■ This Court has reviewed the decision of the ALJ and concludes that the ALJ correctly followed the procedure set forth by the Secretary in reviewing Plaintiff's claim. Moreover, there is sufficient evidence in the record to support the ALJ's conclusion that Plaintiff was capable of performing sedentary work.

In evaluating the claim, the ALJ first found that Plaintiff has not been gainfully employed since October 7, 1991. The ALJ next considered Plaintiff's ailments and found them to be "severe." The ALJ concluded, however, that these impairments did not meet or equal in severity any of the impairments listed in the Regulations. As a result, Plaintiff was not entitled to an automatic finding of disability. Plaintiff does not contest these findings.

Accordingly, the ALJ proceeded to the next step in the sequential analysis. After reviewing the medical evidence, the ALJ found that Plaintiff was unable to return to his past job as a fire fighter. The ALJ determined, however, that based on his age, residual functional capacity, work experience, and education, Plaintiff was able to perform sedentary work. As such, the ALJ determined that Plaintiff was not disabled under the Act.

The ALJ's determination that Plaintiff was capable of performing sedentary work was supported by substantial medical evidence. Four examining physicians, Drs. Zickel, Rosen, Pulver and Magliato, all agreed that Plaintiff was capable of sedentary work. Although each agreed that Plaintiff could not return to his previous work as a fire fighter, each also found Plaintiff capable of performing sedentary or light duty work.

■ Plaintiff argues that the testimony of Drs. Zickel, Rosen, Pulver and Magliato should not be considered "substantial evidence" because they were directed to examine Plaintiff by Oracle Management, Plaintiff's insurance agency. While "report[s] submitted by a witness whose self-interest may well have dictated its contents cannot and should not be permitted to constitute substantial evidence," *Cullinane v. Secretary of H.H.S.,* 728 F.2d 137, 139 (2d Cir.1984), there is no indication that the opinions of Drs. Zickel, Rosen, Pulver, and Magliato were dictated by their relationships with Oracle. Further, unlike *Odorizzi v. Sullivan,* 841 F.Supp. 72 (E.D.N.Y.1993), there is no evidence that at the time the Doctors rendered their opinions, Plaintiff was litigating the amount of workers' compensation benefits owed to him. These opinions, therefore, provide substantial evidence that Plaintiff is able to perform sedentary work.

 Portions of Dr. Mazella's opinion are not inconsistent with the opinions of these four specialists. In September 1992, Dr. Mazella explained that Plaintiff was totally disabled for his job as a fire fighter, not for all work. He further reported that Plaintiff could sit for 2 hours, stand/walk for 2 hours, and could occasionally lift and carry 10–20 pounds. With the recommendation that Plaintiff be allowed to charge positions periodically, Dr. Mazella's assessment would not preclude the performance of sedentary work.

■ Contrary to Plaintiff's assertions, the ALJ properly considered Dr. Mazella's opinion of total disability. As the treating physician, Dr. Mazella's opinion is afforded "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *See Also Schisler v. Sullivan,* 3 F.3d 563 (2d Cir.1993) (explaining and upholding the regulation).

Although he noted the importance of Dr. Mazella's opinion, the ALJ concluded that the finding of total disability was not well-supported by medically acceptable clinical and laboratory diagnostic techniques, and found it to be inconsistent with the opinions of four other specialists. (Tr. 23). The ALJ further found that Dr. Mazella's opinion was based largely on Plaintiff's subjective statements, which the ALJ found to be overstated. (Tr. 23). Thus, he was not obligated to give Dr. Mazella's "total disability" opinion controlling weight.

■ Lastly, Plaintiff argues that his psoriatic arthritic warrants a finding of disability. This contention is not supported by the evidence in the record. Dr. Chodock stated that Plaintiff was unable to return to his past work, but the Doctor indicated no restrictions on Plaintiff's abilities with respect to light duty employment. Likewise, Dr. Balensweig stated that the arthritis was not causing a "major disability." None of the other physicians that examined Plaintiff indicated that his arthritic condition would preclude performance of sedentary work.

*Conclusion*

In sum, a careful examination of the entire record shows that Plaintiff received a "full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the act...." *Bluvband v. Heckler,* 730 F.2d 886, 892 (2d Cir.1984). The ALJ's decision was based on the correct legal standard and supported by substantial evidence. Accordingly, the Secretary's determination is affirmed, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion is granted.

IT IS SO ORDERED.