Paul SAVIANO, Jr., Plaintiff,

v.

Shirley S. CHATER, Commissioner of Social Security, Defendant.

No. CV 95–5244 (ADS).

United States District Court, E.D. New York.

March 5, 1997.

Binder and Binder, Hauppauge, NY (Charles E. Binder, of counsel), for Plaintiff.

Zachary W. Carter, United States Attorney, Brooklyn, NY by Thomas A. Jones, Jr., Special Assistant U.S. Attorney, for Defendant.

1. Because prior case law refers to the Secretary of Health and Human Services as the proper defendant, the Court will apply the term Commissioner and Secretary interchangeably.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

This lawsuit arises from the claims of the plaintiff, Paul Saviano, Jr. ("plaintiff" or "Saviano"), that he was wrongfully denied social security disability benefits. Saviano commenced this action pursuant to 42 U.S.C. § 405(g), in which he appeals from the February 7, 1995 decision of Administrative Law Judge Richard Karpe ("ALJ"), finding that he was not disabled as of the last date of his insured status, March 30, 1991, and as a result, was not entitled to benefits.

Presently before the Court is the motion of the plaintiff and cross motion of the defendant, Shirley S. Chater, Commissioner of Social Security (the "defendant," "Commissioner" or "Secretary")[1], for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).

### I. Background

#### A. The events leading to the plaintiff's claim

The plaintiff, Paul Saviano, was born on May 27, 1945 and is presently 51 years of age. He was 45 years of age on March 31, 1991. In the early 1980's, he was employed by the New York City Department of Sanitation as an electrician. According to Saviano, his job was to "troubleshoot[ ] for electric cranes ... [by] climb[ing] cranes to check electrical problems." R. 111.[2] His work required bending, climbing and kneeling. R. 52. In August 1982, Saviano injured his knee when he slipped on some debris while working in a landfill. R. 45. He was taken to Victory Hospital in Staten Island. R. 46. Although he went to a clinic run by his employer shortly after being released, he did not seek further medical treatment, opting instead to "take care" of the injury himself, which he did for "a year or better." R. 46–48. According to Saviano, he continued to work during this period, but "kept falling down [and] buckling." R. 46. In 1984, the plaintiff underwent arthroscopic surgery on

2. "R." refers to the record from the prior proceedings.

his knee which did not relieve the problem, and consequently, he retired. R. 52. The surgery was performed by a "Dr. Lambert" or "Dr. Lampert" who treated Saviano on earlier occasions, but whose records could not be located. R. 39, 118.

In addition to his knee problems, the plaintiff began experiencing backaches eight to ten years prior to the hearing, which was held on January 19, 1995, and in any event no later than 1990. R. 57–58. During this period he also developed difficulty breathing and shortness of breath but did not seek medical attention because he assumed it was the result of his being overweight. R. 59–60.

In August 1992, he had a heart attack. R. 59. On September 1, 1992, Saviano was treated by Dr. Barton Cohen for his heart problem. R. 137. He was hospitalized at North Shore University Hospital where his condition was diagnosed as a myocardial infarction. *Id.* Dr. Cohen found Saviano to suffer from hypertension, diabetes, and high cholesterol. R. 159.

On September 13, 1993, Saviano was examined by Dr. Harry Kousourou, a Social Security consultant. R. 140–42. Dr. Kousourou noted the plaintiff's diabetes, atherosclerotic heart disease, and the status post left knee injury. R. 140. Examination of plaintiff's chest revealed a "[r]egular rate of rhythm, normal S–1, S–2." Tr. 141. There were no murmurs, gallops, rubs or clicks. *Id.* Saviano was wearing a left knee brace and had a greatly diminished range of motion of the left knee due to crepitus. *Id.* He also had diminished girth of the left quadricep. *Id.* Saviano's gait was antalgic, secondary to knee pain and he was not able to ambulate without a cane. R. 142. A resting EKG revealed a normal sinus rhythm, normal electrical axis and normal intervals. There was no evidence of ischemia, infarction, hypertrophy or ectopy, and no change on heavy inspiration. *Id.* Dr. Kousourou's impression was atherosclerotic heart disease with chronic stable angina, degenerative arthritis of the left knee and diabetes mellitus. *Id.*

According to a letter dated July 18, 1994 written by Dr. Barton Cohen, on June 16, 1994, the plaintiff was hospitalized for a second cardiac catherization which revealed "no re-stenosis in the circumflex, but a severe lesion in the right coronary artery." R. 159. The following day, plaintiff underwent angioplasty which reduced the lesion from 90% to approximately 30%. *Id.* Dr. Cohen found that plaintiff's obesity, diabetes, and hypertension precluded him from working in any profession at that time. *Id.*

The plaintiff's current treating physician is Dr. Gale Pugliese who began seeing him in 1992. R. 132. According to Saviano, Dr. Pugliese's earliest note, which is handwritten and unsigned covers treatment from October 8, 1992 through July 11, 1993 during which she saw him every three to six months. R. 132–36. Dr. Pugliese reported that on June 11, 1993, the plaintiff exhibited a slow antalgic gait, left quadricep atrophy and swelling of the left knee which had a decreased range of motion, as did plaintiff's right ankle. R. 132. There was spasm of the left knee and the left quadricep strength was 3+ out of 5. *Id.* The plaintiff was wearing a double upright pro brace and orthotics, and taking Lopressor, Lopid and Micronase. R. 133. Dr. Pugliese's diagnosis was diabetes, cardiac disease, and hypertension. R. 133. The doctor reported that, in her medical opinion, plaintiff could occasionally lift one to two pounds, but could frequently lift no weight. R. 136. Also, Saviano could stand and walk less than two hours a day and sit less than six hours a day. *Id.* He was limited with respect to pushing and pulling, was unable to bend and squat, and had slow mobility. *Id.*

In a subsequent letter dated May 23, 1994, Dr. Pugliese states that during her initial meeting with Saviano, he claimed that he had been suffering from "fatigue, shortness of breath with exertion, and decreased ability to ambulate" and "knee pain" for "five years." R. 155. The letter continues by noting that after directing the plaintiff to engage in therapeutic exercises, a cardiac rehabilitation program and a diet, that

the prognosis is poor. The knee will only progressively worsen. Whenever he attempts to squat, sit for more than 2 to 3 hours or walk for more than 0 to 1 hour his knee gives out. He either falls or the knee locks. He is unable to lift more than 10 pounds on a regular basis. He is unable to

bend or reach without exacerbating his conditions .... His cardiac condition renders him unable to lift or walk for absolutely any functional working activity.

*Id.* Dr. Pugliese concluded the letter by stating that "[t]hese medical conditions indeed existed prior to March 31, 1991...." R. 156. She reiterated this opinion in a second unaddressed letter dated February 6, 1995. R. 169

On May 31, 1994, plaintiff was examined consultatively by Dr. Mark P. Figgie. R. 149–50. Physical examination of Saviano revealed no gross abnormalities in Saviano's upper extremities, although there was a mild loss of motion in the lumbar spine and slight restriction in the hip range of motion. R. 149. The plaintiff had tenderness on the joint line in the left knee with patello-femoral crepitus. *Id.* Saviano exhibited mild medial-lateral instability but no anterior or posterior instability. *Id.* Plaintiff's right ankle was tender and swollen over the medial joint line and he had a slight decrease in sensation of the left medial calf. *Id.* Saviano's quadriceps strength was 3+ out of 5, the extension of halluces longus muscle strength was 4+ out of 5, and abduction strength was 5 out of 5. *Id.* X-rays of the lumbar spine revealed slow changes at L1–L2 and L3–L4 with a spina bifida at L5. R. 149, 153. Saviano had mild degenerative changes in both hips and his knee had mild osteophytes. *Id.*

Dr. Richard Goodman, who had not examined the plaintiff, testified at the hearing as a medical expert on behalf of the Commissioner. R. 62–69. Based on the medical records and plaintiff's testimony, Dr. Goodman concluded that the plaintiff was able to perform sedentary work on or before March 31, 1991. R. 66–67. He found that Saviano could, on a sustained basis, sit six hours a day and lift up to ten pounds. R. 67. Dr. Goodman further concluded that the degree of the plaintiff's back pain would not have stopped him from sitting for six hours. *Id.* As a result, prior to March 1991, according to Dr. Goodman, Saviano had the ability to perform sedentary work. R. 68.

### B. *Procedural history*

The plaintiff filed an application for Social security disability benefits on June 24, 1993. R. 70. The application was initially denied on November 16, 1993 and again upon reconsideration on March 16, 1994. R. 86, 94. The plaintiff then requested a hearing which was held on January 19, 1995 before an ALJ Karpe. R. 97. On February 7, 1995, the ALJ issued a written decision finding that the plaintiff was not disabled prior to March 31, 1991, the date he was last insured for disability benefits. Accordingly, Judge Karpe determined that he was not entitled to social security payments. R. 15–20. On October 20, 1995, the Appeals Council denied the plaintiff's request for review. On December 19, 1995, the plaintiff commenced this action in federal court.

As set forth above, the issue presented is whether there is substantial evidence to support the Commissioner's decision that the plaintiff was not disabled prior to March 31, 1991, the date he was last insured for purposes of obtaining social security disability benefits.

### II. *The ALJ's decision*

On February 7, 1995, the ALJ issued a written decision denying the plaintiff's application for benefits "find[ing] that the claimant was not disabled on or before March 30, 1991 and, therefore, is not entitled to disability insurance benefits." R. 15. The ALJ's decision was based in part on the testimony of medical expert Dr. Richard Goodman:

> Based on a hypothetical question, assuming that the claimant's allegations of left knee pain, back pain, problems walking, chest pain and shortness of breath on exertion and thirst due to diabetes, the medical expert opined that such a person nevertheless would have been capable of performing sedentary work which, in an eight-hour workday, requires approximately six hours of sitting, two hours of standing/walking and lifting carrying up to 10 pounds occasionally [on March 30, 1991].

ALJ Dec. at 3, R. 17. The ALJ also rejected the conclusions of Dr. Pugliese that Saviano was disabled prior to March 31, 1991 as binding upon the Commissioner:

While the claimant's attorney ... urged that disability prior to March 31, 1991 be found based on Dr. Pugliese's statement that the claimant's medical conditions indeed existed prior to March of 1991 and were of a progressive nature ..., 20 CFR 404.1527(d) provides that the opinion of a treating source on the nature and severity of a claimant's impairment is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. In the claimant's particular case, there is no objective medical evidence at all to support Dr. Pugliese's opinion and, even if there was, it could not be concluded—due to insufficient evidence as to resulting limitations—that said impairments prevented the claimant from working. This case is distinguishable from *Rivera v. Sullivan,* 923 F.2d 964 (2d Cir.1991), wherein a current treating physician's retrospective opinion as to disability was based on a prior treating physician's medical records. Here Dr. Pugliese's opinion as to the period prior to when his treatment of the claimant began, is not supported by medically acceptable clinical and laboratory diagnostic techniques and is not based on another treating physician's records.

ALJ Dec. at 4–5, R. 18–19.

Based on the totality of the evidence introduced at the January 19, 1995 hearing, the ALJ made the following findings:

(1) The claimant met the special insured status requirements of Title II of the Social Security Act on December 21, 1984, the date on which he alleged that he became disabled and last met them on March 31, 1991.

(2) The claimant has not engaged in substantial gainful activity since December 21, 1984.

(3) On or prior to March 31, 1991, when his insured status under Title II of the Act expired, the claimant failed to prove that he had a medically determinable severe impairment, i.e., one which significantly limited his ability to perform basic work-related physical or mental activities.

(4) As evaluated within the context of SSR 88–13, even assuming the credibility of the claimant's testimony regarding severe left knee pain, shortness of breath on exertion and diabetes on or prior to March 31, 1991, there was no evidence of an impairment or impairments which met or medically equalled a listing in Appendix 1 and, even if unable to perform past relevant work as an electrician, the claimant remained capable of sedentary work which, in an eight-hour workday, requires approximately six hours of sitting, two hours of standing (walking and lifting/carrying up to 10 pounds occasionally) (See SSR 83–10).

(5) Based on the claimant's younger age, a high school degree, a history of semi-skilled to skilled work as an electrician, and a residual functional capacity for sedentary work, Rules 201.28 and/or 201.29 and Rules 201.21 and/or 201.22 or Table No. 1, Appendix 2 (Subpart P, Part 404 of the Regulations) direct a decision of "not disabled" from December 21, 1984 through March 31, 1991.

ALJ Dec. at 5, R. 19.

On February 21, 1995, a request for review was made. On March 9, 1995, additional evidence was submitted. R. 8–11. 4–5. On December 19, 1995, Saviano commenced this lawsuit with the filing of his complaint seeking "review of the decision of the Hon. Richard Karpe, Administrative Law Judge." Compl. ¶ 1. Presently before the Court is the motion of the plaintiff and the cross motion of the defendant for judgment on the pleadings.

### III. *Discussion*

#### A. *Standards of Review*

##### 1. *Judgment on the Pleadings*

"Judgment on the pleadings is appropriate where material facts are undisputed and a judgment on the merits is possible merely by considering the contents of the pleadings." *Beattie v. Acer Am. Corp.,* 914 F.Supp. 893, 894 (E.D.N.Y.1996). In considering a motion for judgment on the pleadings, the Court must accept as true all of the non-movant's

well pleaded factual allegations, and draw all reasonable inferences therefrom in favor of the non-movant. *Davidson v. Flynn,* 32 F.3d 27, 29 (2d Cir.1994); *DeSantis v. United States,* 783 F.Supp. 165, 168 (S.D.N.Y.1992). "Unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle the plaintiff to relief," the court cannot grant a defendant's motion for judgment on the pleadings. *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.), *cert. denied,* 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994) (when deciding a Rule 12(c) motion, the court applies the same standard as that applicable to a 12(b)(6) motion) (internal quotation omitted)

### 2. *Review of the Secretary's Decision*

■ Judicial review of a decision made by the Secretary is governed by 42 U.S.C. § 405(g), which states that

> [t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner ... as to any fact, if supported by substantial evidence, shall be conclusive....

*See Diaz v. Shalala,* 59 F.3d 307, 312 (2d Cir.1995); *Smith v. Shalala,* 856 F.Supp. 118, 121 (E.D.N.Y.1994). In evaluating the evidence, "[t]he Court may not substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon a de novo review." *Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991). In *Cormano v. Sullivan,* 1990 WL 92706, at *3 (E.D.N.Y.1990), the Court held that

> [t]he fact that the record as a whole might support an inconsistent conclusion is immaterial ... for the language of [405(g) ] ... requires that the Court uphold the Secretary's decision even should the Court disagree with such decision as long as it is supported by "substantial evidence."

*Id.,* quoting, *Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir.1972). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), quoting, *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938); *see Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir.1996); *Perez v. Chater,* 77 F.3d 41, 46 (2d Cir.1996); *Donato v. Secretary of HHS,* 721 F.2d 414, 418 (2d Cir.1983). Moreover, "[t]he conclusive effect of the substantial evidence rule applies no only with respect to the Secretary's findings as to basic evidentiary facts, but also to inferences and conclusions drawn therefrom." *Rodriguez v. Califano,* 431 F.Supp. 421, 423 (S.D.N.Y. 1977); *see Vasquez v. Secretary of HHS,* 632 F.Supp. 1560, 1563 (S.D.N.Y.1986). Thus, the role of the district court is limited and substantial deference is afforded to the Commissioner's decision. *See Francese v. Shalala,* 897 F.Supp. 766, 770 (S.D.N.Y.1995). In order for the Court to grant judgment on the pleadings, the movant must "clearly establish[ ] that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rivera v. Schweiker,* 717 F.2d 719, 722 n. 1 (2d Cir. 1983), quoting, 5 Charles Wright & Arthur Miller, Federal Practice and Procedure § 1368 (1969).

■ In undertaking this analysis, the Court notes that in this circuit, the ALJ has an affirmative duty to develop the record in light of the non adversarial nature of benefits proceedings. *Pratts,* 94 F.3d at 37. This duty exists even where, as here, the claimant is represented by counsel. *Id.*

### B. *Statutory and Regulatory Framework*

Federal disability insurance benefits are available to those individuals who are "disabled" within the meaning of the Social Security Act. *See* 42 U.S.C. § 423(a), (d). The Act provides that a claimant of disability benefits must first establish his or her "insured status." *See* 42 U.S.C. 423(c). Section 423(c) sets forth guidelines for ascertaining insured status based on factors such as age, number of quarters of covered employment, and other variables. *Id.* In the present case, the plaintiff met the special insured status earnings requirements of the Act on Decem-

ber 21, 1984, for the purpose of establishing entitlement to disability insurance benefits. The parties do not dispute that Saviano lost his special insured status on March 31, 1991, which is why this date becomes critical in determining the dates of the plaintiff's disability.

In any event, once the claimant establishes that he is insured, he must demonstrate that he is disabled within the meaning of 42 U.S.C. § 423(d) which provides in relevant part:

> The term "disability" means inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). Further,

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work....

42 U.S.C. § 423(d)(2)(A). Physical or mental impairments, within the meaning of the statute, are impairments that result from "anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Secretary has established a five step sequential evaluation process for determining whether a person is disabled. *See* 20 C.F.R. § 404.1520, 416.920; *see also Perez* 77 F.3d at 46; *Rivera,* 717 F.2d at 722. The first step of the inquiry is whether the applicant is working and engaging in "substantial gainful activity." If the applicant is involved in such activities, then he is not disabled. 20 C.F.R. § 404.1520(b).

If the applicant is not engaged in "substantial gainful activity," however, then the second step is to determine whether the applicant suffers from a "severe impairment." That determination is governed by the severity regulation which provides:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.....

20 C.F.R. §§ 404.1520(c), 416.920(c). The ability to do basic work activities, within the meaning of the statute, is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). Such abilities include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. §§ 404.1521(b), 416.921(b)(1). If it is determined that the applicant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, then the applicant does not have a "severe impairment" and cannot be considered disabled. 20 C.F.R. §§ 404.1521(c), 416.921(c).

Third, if the applicant has a severe impairment, which meets the twelve month duration requirement specified in the statute, and is (i) listed among the impairments in Appendix 1 to 20 C.F.R. Part 404 subpart P ("Appendix 1"), or (ii) is considered as "equal" to the listed impairments in Appendix 1 as determined by 20 C.F.R. § 404.1526, then the Secretary must deem the applicant disabled. 20 C.F.R. § 404.1520(d).

If the Secretary cannot ascertain a claimant's disability under these first three steps, he or she must proceed to the fourth step and review both the applicant's "residual functional capacity" ("RFC") and the physical an mental demands of the work the applicant has done in the past. RFC is the applicant's physical and mental strength capability to perform work despite the limitations resulting from his impairment. See 20 C.F.R. § 404.1545(a); Appendix 2, 20 C.F.R.

Part 404 subpart P sec. 200.00(c); *see also Davis v. Shalala,* 883 F.Supp. 828, 831 (E.D.N.Y.1995). If the applicant can still perform the kind of work he performed in the past, his "past relevant work," he is deemed not to be disabled. 20 C.F.R. § 404.1520(e).

If the applicant cannot perform his past work, in the fifth step the Secretary must consider the applicant's age, education, and vocational skills as well as his RFC to determine if the applicant can do any other work. If, after considering all of these factors, the Secretary decides that the applicant still cannot do other work, then he is considered disabled. 20 C.F.R. § 404.1520(f).

█ The claimant carries the burden, within the boundaries of the first four steps, of proving disability. *Rivera,* 717 F.2d at 722. If the claimant establishes that the ailment is sufficiently severe to prevent him from doing basic work activities, the burden shifts to the Secretary to prove the fifth step—that there is other work that the claimant could perform. *See Perez,* 77 F.3d at 46; *Bluvband v. Heckler,* 730 F.2d 886, 891 (2d Cir.1984); *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980).

█ In assessing a disability claim, the Secretary must consider both objective and subjective factors. *Bluvband,* 730 F.2d at 891. The objective factors include medical facts, medical opinions based upon these facts and diagnoses. The subjective considerations include evidence of pain and disability testified to by the claimant or other witnesses. *See id.; Gold v. Secretary of HEW,* 463 F.2d 38, 41 n. 2 (2d Cir.1972).

1. *Objective medical analysis*

█ The evidence at the hearing, as set forth above, consisted mostly of Saviano's testimony regarding his ailments and also the reports and writings of physicians who treated him or with whom he consulted. Evaluation of physicians' testimony is governed by the "treating physician rule." As specified in 20 C.F.R. § 404.1527(d), the rule provides that the treating physician's opinion as to the claimant's disability is controlling if it is well supported by medically acceptable

clinical and laboratory diagnostic techniques, an is not inconsistent with the other substantial evidence in the record. Even if the treating physician's opinion is retrospective, it will be binding unless contradicted by other medical evidence or by "overwhelmingly compelling" non-medical evidence. *Rivera v. Sullivan,* 923 F.2d 964, 968 (2d Cir.1991); *Wagner v. Secretary of HHS.,* 906 F.2d 856, 862 (2d Cir.1990); *Gercke v. Chater,* 907 F.Supp. 51, 52 (E.D.N.Y.1995).

█ If the treating physician's opinion is not supported by medically accepted techniques or is inconsistent with the substantial evidence, then the weight given to the opinion is determined by considering the following factors: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship; (iii) the relevant evidence supporting the opinion; (iv) the consistency of the opinion with the record; (v) whether the opinion is from a specialist; and (vi) other relevant information provided by the claimant to support the decision. *See* 20 C.F.R. § 404.1527(d); *see also Schisler v. Sullivan,* 3 F.3d 563, 567 (2d Cir.1993).

In *Bluvband,* the Second Circuit set out a sequence which the ALJ should follow in evaluating medical evidence:

Initially, the ALJ should see whether the treating physician has determined that the claimant is disabled. He should then examine the record for conflicting evidence. Upon finding conflicting evidence, he should compare the probative value of the treating physician's opinion with the probative value of the conflicting evidence. He should do so with the recognition that the treating physician's determination is generally 'entitled to more weight than that of a doctor who has only seen the claimant once.'

*Bluvband,* 730 F.2d at 893, quoting, *Rosa v. Weinberger,* 381 F.Supp. 377, 380 (E.D.N.Y. 1974). Applying these standards, the Court now considers the plaintiff's claims.

█ This case turns upon the Court's application of the treating physician rule and the weight afforded to Dr. Pugliese's opinion thereunder. As set forth above, while the

Commissioner can afford controlling weight to a treating physician's opinion, that opinion must be supported by clinical and laboratory diagnostic evidence and must not be inconsistent with other substantial evidence of record. 20 C.F.R. § 404.1527(d)(2). Dr. Pugliese, who treated the plaintiff on several occasions, beginning in 1992, subsequent to the period at issue in this case, is the only doctor who qualifies as his treating physician. Dr. Pugliese stated that Saviano's cardiac condition rendered him unable to lift or walk for any functional working activity, and that he was disabled prior to March 31, 1991. R. 155–56, 169. However, as the ALJ recognized, there was no clinical or laboratory evidence prior to March 31, 1991 supporting Dr. Pugliese' conclusion with respect to Saviano's disability as of the last date of his insured status. R. 19. As a result, the Court finds that ALJ Karpe did not err in failing to give controlling weight to Dr. Pugliese's diagnosis. *See* R. 18–19. Additionally, Dr. Cohen, in his letter dated July 18, 1994, stated that Saviano's condition precluded him from working in any profession *"at this particular time."* R. 159 (emphasis supplied). The Court notes that Dr. Cohen did not offer an opinion regarding the plaintiff's condition prior to March 31, 1991.

■ The opinion of Dr. Figgie, a consultative physician, was similar to that of Dr. Pugliese. Dr. Figgie found mild loss of motion in the lumbar spine and slight restriction in the hip range of motion when he observed Saviano on May 31, 1994. R. 149. Dr. Figgie gave no opinion as to any disability on or before March 31, 1991. A consulting physician's opinion however, should be given limited weight. *See Bluvband,* 730 F.2d at 893. In addition, Dr. Kousourou, who also examined Saviano in consultation, noted Saviano's current condition in September 1993, but made no mention of his condition prior to March 31, 1991. R. 140–42.

Further, the plaintiff was vague when he was questioned about the onset and nature of his back and chest pain, stating only that his backache could have started eight or ten years earlier. R. 57–58. He admitted that he did not seek any medical treatment at that time and did not receive medical treat-

ment for his chest pain until after he had a heart attack in 1992. R. 59–60. The plaintiff's failure to present evidence of a steady course of treatment prior to March 31, 1991, undermines his claim of a social security disability at that time. *See Arnone v. Bowen,* 882 F.2d 34, 39 (2d Cir.1989).

The Court further notes that the record contains conflicting evidence. At the hearing, Dr. Richard Goodman offered his opinion regarding the plaintiff's condition prior to March 31, 1991. R. 62–69. Specifically, Dr. Goodman determined that on a sustained basis, Saviano was able to sit six hours and lift up to ten pounds. R. 57. Furthermore, Dr. Goodman concluded that the degree of the plaintiff's back pain would not have stopped him from sitting for six hours. *Id.* In Dr. Goodman's opinion, prior to March 31, 1991 Saviano was able to perform sedentary work. R. 68.

Resolving these inconsistent findings, the ALJ held that the plaintiff was not disabled and that he had the capability of performing sedentary work, which in an eight hour workday, requires approximately six hours of sitting, two hours of standing, walking and lifting/carrying up to ten pounds occasionally. R. 19. *See* 20 C.F.R. § 404.1546 ("For cases at the Administrative Law Judge hearing or Appeal Council level, the responsibility for deciding your residual functional capacity rests with the Administrative Law Judge 0 the Appeals Council.").

The finding of the ALJ that the plaintiff could perform sedentary work prior to and on March 31, 1991 is based upon substantial evidence. The ALJ correctly placed limited emphasis on the opinion of Dr. Pugliese for several reasons. First, she did not examine Saviano prior to March 31, 1991. Second, her opinion as to the plaintiff's disability as of that date was not based on any objective medical evidence such as contemporaneous diagnostic tests or laboratory results. Finally, her opinion was directly contradicted by Dr. Goodman. Based upon the objective evidence, there is substantial support for the ALJ's determination that Saviano did not suffer from a "severe impairment" under the third step of the five step inquiry and no further analysis was necessary.

### 2. *Subjective Complaints of Pain*

 In addition to the objective medical facts and the medical opinions based upon those facts, *see Bluvband,* 730 F.2d at 891, the ALJ also considered the plaintiff's subjective complaints of pain and disability, for "the subjective element of pain is an important factor to be considered in determining disability." *Mimms v. Heckler,* 750 F.2d 180, 185 (2d Cir.1984). It must be emphasized that ". . . it is the function of the Commissioner, and not a reviewing court, to pass upon the credibility of witnesses and to set forth clearly its findings which form the basis for its decision." *Stupakevich v. Chater,* 907 F.Supp. 632, 637 (E.D.N.Y.1995); *see also Ferraris v. Heckler,* 728 F.2d 582, 587–88 (2d Cir.1984); *Vasquez v. Secretary of HHS,* 632 F.Supp. 1560, 1563–64 (S.D.N.Y.1986). The ALJ did not find that Saviano's subjective complaints of pain warranted a determination that he was disabled.

The plaintiff must bolster complaints of pain by demonstrating, through medical findings, that an underlying condition does exist and that it would be reasonably expected to produce the symptomatology alleged. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(b); 416.929(b); Social Security Ruling ("SSR") 88–13; *Gallagher v. Schweiker,* 697 F.2d 82, 84 (2d Cir.1983).

 The evidence shows that although the plaintiff claims to have had a knee problem since 1984, he did not see medical assistance for his knee until only year later. R. 46. In addition, he did not seek medical assistance for his back or chest pain until 1992 when he suffered a heart attack. R. 59. This provides insight into the extent of the pain that Saviano was actually experiencing, with reasonable certainty, and whether he was incapacitated at that time.

If the claimant's symptoms indicate a more serious problem than is established by the medical evidence, other factors such as the claimant's daily activities and the location, duration, frequency, and intensity of the pain should be considered. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 88–13. In this base, the plaintiff provided evidence at the hearing that he is presently able to perform duties such as light housekeeping, making his bed and driving short distances. R. 110. Reviewing the totality of these factors, the Court finds that the ALJ's failure to award benefits based on subjective complaints of pain was based upon substantial evidence.

### IV. *Conclusion*

After reviewing the parties' submissions, and for the reasons stated above, it is hereby

ORDERED, that the plaintiff's motion for judgment on the pleadings pursuant to Fed. R.Civ.P. 12(c) is denied; it is further

ORDERED, that the commissioner's cross-motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is granted; it is further

ORDERED, that the Clerk of the Court close this case.

SO ORDERED.