Sylvester SINGLETARY, Plaintiff,

v.

**Kenneth APFEL, Commissioner of the Social Security Administration,[1] Defendant.**

**No. 97–CV–6104L.**

United States District Court,
W.D. New York.

Nov. 10, 1997.

R.Civ.P. 25(d).

James R. Sullivan, Fulreader, Rosenthal, Sullivan, Clifford, Santoro & Kaul, Rochester, NY, for Plaintiff.

Anne VanGraafeiland, Asst. U.S. Atty., Rochester, NY, for Defendant.

**ORDER**

LARIMER, Chief Judge.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled, and therefore, is not entitled to disability insurance benefits. This Court finds that the Commissioner's decision is not supported by substantial evidence and accordingly remands the case solely for the calculation of benefits.

## PROCEDURAL BACKGROUND

Plaintiff Sylvester M. Singletary ("Singletary") was born on December 7, 1946. (T.

2. "T.——" refers to the page of the transcript of the Administrative Record filed by the Commis-

53).[2] On September 19, 1994, Singletary applied for Social Security disability benefits. (T. 53–57). He claimed that he was unable to work since December 31, 1991 due to a pinched nerve in his right wrist, carpal tunnel syndrome in his left wrist, and neck and back pain. (T. 75). The Social Security Administration denied his application initially and upon reconsideration. (T. 58–60; 72–74). An Administrative Law Judge ("ALJ") held a hearing in the case on April 16, 1996 and issued a decision dated June 28, 1996. (T. 20–52; 12–17). The ALJ found that Plaintiff could still perform his past work as a security guard and therefore was not entitled to disability benefits. (T. 17).

Plaintiff appealed that decision to the Appeals Council, which issued the Commissioner's final decision on March 3, 1997. (T. 5–7). Because the Appeals Council refused to review the ALJ's decision, plaintiff commenced this action. Presently before the Court are the parties' motions for judgement on the pleadings pursuant to Federal Rules of Civil Procedure 12(c).

## FACTUAL BACKGROUND

Singletary completed three years of college and then worked as an ironworker and in the construction trade from 1975 to 1987. (T. 79). In 1987, according to one medical report, Singletary injured himself when he fell from a ladder. He caught himself with his right hand, preventing a fall of several stories. (T. 116). As a result of that incident, Singletary underwent surgical repair for torn right rotator cuff in June of 1988, at which time he complained of back and neck pain, as well as shoulder pain. (T. 26–7; 75). Thereafter, Singletary went back to work as a dishwasher-baker and a security guard at a mall. (T. 83). Singletary described his security guard duties as including responsibility "to apprehend offenders[,] take them into custody and call police." (T. 87).

Singletary testified that while working as a guard, he was involved in a scuffle in which he suffered a blow to the face and was "slammed into the wall." (T. 25). In an

sioner with his Answer.

April 1994 medical report Singletary described to the physician a separate incident that occurred about one month after this scuffle, in which he was injured after a collision with a "bolting shoplifter". (T. 150). Sometime after that incident, apparently on December 31, 1991, Singletary stopped working because "everything seemed to break down after that." (T. 151).

Singletary sought Worker's Compensation benefits in connection with the incidents which occurred while he was a security guard, so the record contains a series of reports from doctors who saw him in this context. (T. 25–6, 238–49). He sought treatment for back and neck pain from a variety of practitioners, including orthopaedic surgeons and chiropractors. (See, e.g., T. 287–90; 165–7; 146).

The medical evidence establishes that Singletary suffered from degenerative changes in the cervical and lumbar spine. In July 1992, Dr. Dunn, a neurologist, noted that an MRI examination of Singletary's cervical spine "showed some degenerative changes at C3–4 as well as C6–7, but no changes that would correlate with his symptoms." (T. 169). A later MRI examination, which took place on June 20, 1995, after Singletary applied for disability benefits, resulted in the following findings:

At the C34 level, there is degenerative disc disease with decreased disc height, small anterior and posterior vertebral body osteophytes, and small anterior and posterior disc bulges. . . .

At the C5–6 and C6–7 levels, there is degenerative disc disease with decreased disc height and small anterior and posterior disc bulges.

At the T1–2 level, there is a minimal bulge of the posterior disc causing partial effacement of the ventral subarachnoid space. . . .

(T. 329–30).

In addition, a January 26, 1995 scan of Plaintiff's back at Borg Imaging Group concluded that there was "[n]o evidence of disc herniation. Disc degenerative changes at the lower three lumbar levels, most marked at

LA–5, L5–S1. No associated spinal stenosis." (T. 331).

Singletary's long-term treating physician, Dr. Dobson, reported on at least three occasions that, due to cervical and lumbar injuries, he considered Singletary totally disabled. (T. 160–2; 143; 141–2). Dr. Dobson also completed a form which indicated that Singletary could not walk a full city block without rest or severe pain, and could continuously sit for one hour and stand for one hour, for a total sitting and standing of less than two hours per eight hour work day. (T. 319). The report also noted that Singletary would need to lie down 10 to 15 times at unpredictable intervals during the day. (Id.). Finally on September 5, 1996, after reviewing the ALJ's decision in this case, Dr. Dobson wrote a letter that was included in the record before the Appeals Council. (T. 335–8). That letter refuted the ALJ's decision and lays out the bases of Dr. Dobson's conclusions that Plaintiff is totally disabled, including citations to American Medical Association and National Research Council reports in relation to pain studies. (T. 335–6).

The ALJ denied benefits in a fairly brief decision on the basis that "MRI scans of the lumbar and cervical spine have produced evidence of degenerative changes, but no disc herniation." (T. 15). He went on to find that Singletary's complaints of pain were not credible because "diagnostic and clinical studies have failed to reveal the presence of a spinal abnormality which could reasonably be expected to produce the degree of pain alleged by the claimant. Recent MRI scans of the lumbar and cervical spine did not show any evidence of disc herniation." (Id.). The ALJ refused to credit Dr. Dobson's statements that Singletary was totally disabled, because "they are not supported by objective clinical or laboratory findings. The essentially negative MRI studies of the cervical and lumbar spine effectively disprove the existence of a severe back or neck condition." (T. 16).

### DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that plaintiff was not under a disability is sup-

ported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. National Labor Relations Bd.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)).

A person is disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A).

■ Plaintiff bears the initial burden of showing that his impairment prevents him from returning to his previous type of employment. *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the [plaintiff] could perform." *Id.; see also, Dumas v. Schweiker,* 712 F.2d 1545, 1551 (2d Cir.1983); *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980).

In order to determine whether plaintiff is suffering from a disability, the ALJ employs a five-step inquiry: (1) whether the plaintiff is currently working; (2) whether the plaintiff suffers from a severe impairment; (3) whether the impairment is listed in Appendix 1 of the relevant regulations; (4) whether the impairment prevents the plaintiff from continuing his past relevant work; and (5) whether there is other work which the plaintiff could perform. 20 C.F.R. § 404.1520; *Berry,* 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. § 404.1520(a); *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir.1992).

In this case, the ALJ found that Singletary failed to prove that he could no longer perform his past relevant work. Instead, the ALJ found that Singletary could still perform work that did not require "lifting over 20 pounds and frequently lifting and carrying over 10 pounds." (Tr. 17). The ALJ found that Singletary retained the functional capacity to still perform his past relevant work as a security guard. (*Id.*). As discussed below, this decision is totally unsupported.

## I. The Treating Physician Rule

■ Plaintiff urged the court to reverse the Commissioner's decision because of the treating physician's opinion that plaintiff was disabled. It has long been recognized that a treating source's opinion of disability is entitled to some weight in claims for Social Security disability benefits. The Second Circuit Court of Appeals established its treating physician rule in a long series of cases, including the cases cited in plaintiff's memoranda of law, *Bluvband v. Heckler,* 730 F.2d 886 (2d Cir.1984) (ALJ should not baldly accept consulting physicians' evaluations which are disputed and formulated after they had examined claimant only once), and *Schisler v. Bowen,* 851 F.2d 43 (2d Cir.1988) (treating physician's opinion of disability binding).

However, the Commissioner promulgated new regulations in response to these holdings. Although these regulations altered the treating physician rule, the Second Circuit upheld their validity in *Schisler v. Sullivan,* 3 F.3d 563, 568–569 (2d Cir.1993).[3] Recently,

---

3. The Regulations state: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).

the present rule was described in the following manner:

> Evaluation of physicians' testimony is governed by the "treating physician rule." As specified in 20 C.F.R. §§ 404.1527(d), 416.927(d), the rule provides that the treating physician's opinion as to the claimant's disability is controlling if it is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record. Even if the treating physician's opinion is retrospective, it will be binding unless contradicted by other medical evidence or by "overwhelmingly compelling" non-medical evidence.

*Saviano v. Chater,* 956 F.Supp. 1061, 1069 (E.D.N.Y.1997) (citations omitted). In cases in which Social Security determines that a medical source opinion is not well-supported, the regulations require the ALJ to accord the physician's statements some extra weight based upon several factors. 20 C.F.R. § 404.1527(d)(2).[4] The factors cited in the regulations include the length of the treatment relationship, the nature and extent of the relationship, the supportability of the source's opinion, the consistency with other medical evidence in the record, whether the opinion involves the speciality of the physician, and any other factors that might be relevant. *Id.*

Thus the issue in this case is whether Dr. Dobson's statements that Singletary was totally disabled should be entitled to controlling weight in accordance with this treating physician rule, or whether it should be accorded some weight. The ALJ refused to grant controlling weight to this opinion, relying heavily on the fact that the objective evidence did not reveal any evidence of disc herniation. However, the ALJ ignored the overwhelming objective evidence that demonstrated degenerative disc disease as well as disc bulging at several levels of Singletary's spine.

Dr. Dobson's finding that degenerative disc disease and disc bulging in Singletary's spine prevent him from working is substantiated by, and consistent with, the other substantial evidence in the record. No medical source supplied a contrary opinion, and objective examinations—in the form of x-rays, CT scans and MRIs—show that Singletary does indeed suffer from these impairments. In addition, the clinical reports contained in the record fail to raise any doubts that might be used to show that Dr. Dobson's opinion is not well supported. For instance, Dr. Markowitz, a surgeon who worked at Simmons Orthopaedic Spine Associates, examined Singletary in 1994. Dr. Markowitz concluded that Singletary suffered from severe cervical and lumbar discomfort. As a result, the doctor sought "authorization for surgical intervention of his cervical spine which will be anterior C3–4 discectomy...." (T. 287–9).[5]

Dr. Dobson's September 5, 1996 letter brings into focus the lack of substantial evidence in support of the ALJ's decision. (T. 335–8). In that document, the physician noted that the ALJ apparently believed that the only disabling spinal condition is disc herniation:

> That concept was en vogue in the 1930's but has been clearly shown scientifically invalid. It is clear that only a small percentage of patients with disabling back pain have "disc herniations". The fact that Mr. Singletary does not have a disc herniation does not at all mean that he does not have a disability. It simply means that he does not have a problem that can be treated and corrected by a neurosurgeon.

(*Id.*).

This comment, although added to the record after the case was decided by the ALJ, highlights the fact that the Commissioner failed to supply any valid reason why Dr.

---

4. "When we do not give the treating source's opinion controlling weight, we apply the factors listed below, as well as the factors in paragraphs (d)(3) through (5) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527(d)(2).

5. Singletary refused to undergo surgery due to his fears that the surgery might result in paralysis or death, and because the only surgeon Dr. Dobson would refer him to was in Buffalo and not in Rochester. (T. 31–4).

Dobson's opinion was rejected. In addition to the lack of proof of herniation, the ALJ's questioning at the hearing suggested that Singletary's refusal to undergo surgery was an additional reason why the ALJ decided to deny benefits: the implication is that Singletary was not doing everything possible to correct his medical condition. (T. 31–4). Yet here again, Dr. Dobson's September 5, 1996 letter rebuts the Commissioner's unsupported conclusion. He stated: "[i]t is also true that people with disc herniation who have surgery do not do any better than people who do not have any surgery." (T. 338).

In cases in which Social Security determines that there is insufficient medical evidence, the Commissioner has the authority to seek additional medical evidence in a variety ways. For instance, Social Security can re-contact treating sources, ask the claimant to undergo a consultative examination, or seek testimony from a medical advisor. 20 C.F.R. §§ 404.1512(e)(1) & (2) and 404.1527.

With these options available, the Commissioner is certainly not authorized to rely on the lay opinion of an administrative law judge to contradict the opinion of a medical source. *Pietrunti v. Director, Office of Workers' Compensation Programs*, 119 F.3d 1035, 1042 (2d Cir.1997), ("Moreover, an ALJ 'cannot arbitrarily substitute his own judgment for competent medical evidence,'" quoting *McBrayer v. Secretary of Health and Human Services*, 712 F.2d 795, 798 (2d Cir.1983)). Thus where the ALJ felt that there was insufficient evidence to support Dr. Dobson's conclusion, the ALJ should have sought some additional information from a medical source. Instead, the ALJ relied solely upon his lay opinion that degenerative disc disease and disc bulges cannot cause significant pain and cannot be disabling, or in the alternative, that herniation is the only back problem that results in disabling pain. This is a significant error that requires reversal of the Commissioner's decision.

In a case like this, which contains a large amount of medical evidence, one could usually find specific examples of inconsistent medical findings. For instance, Dr. Markowitz found that Singletary actually suffered from a lumbar disc herniation, when a subsequent CT scan refuted that. (*Compare,* T. 288 *and,* T. 331). Yet it does not follow that the inconsistencies were significant enough to completely disregard Dr. Dobson's opinion. Even if the ALJ could not assign controlling weight to Dr. Dobson's opinion, the ALJ should have evaluated the factors laid out in the regulations. 20 C.F.R. § 404.1527(d)(2)-(5). Instead, the ALJ rejected Dr. Dobson's opinion in a single sentence. In light of the regulatory factors, Dr. Dobson's opinion would still be entitled to considerable weight. Dr. Dobson had a long treating relationship with Singletary, he relied upon independent examination results in making his decision, and he had a speciality practice of treating patients with chronic back injuries. (T. 335–8). As noted above, instead of pointing to some medical evidence that might cast doubt on Dobson's statement, the ALJ relied upon his lay opinion of what causes back pain. Such reliance cannot form the basis of a denial of benefits. This Court finds that the substantial evidence in the record supports the conclusion of Singletary's treating physician, and there is no substantial evidence to the contrary. Thus this matter is remanded solely for the immediate calculation and payment of benefits.

## CONCLUSION

The record in this case fully supports the conclusion that Plaintiff Sylvester Singletary was disabled based upon severe impairments in his cervical and lumbar spine. The Commissioner's decision that Singletary could still perform his past relevant work and was therefore not disabled was not supported by substantial evidence and should be reversed. Plaintiff's motion for judgement on the pleadings is **GRANTED,** and Defendant's motion is **DENIED.** The matter is remanded to the Commissioner solely for calculation of benefits.

**IT IS SO ORDERED.**