Glenn JONES, Plaintiff,

v.

Donna E. SHALALA, Secretary of Health and Human Services, Defendant.

No. 93 Civ. 7023(DC).

United States District Court, S.D. New York.

Sept. 29, 1995.

Brecher, Fishman, Feit, Heller, Rubin & Tannenbaum, P.C., by Barbara Doblin Tilker, Garden City, New York, for Plaintiff.

Mary Jo White, United States Attorney for the Southern District of New York by Susan D. Baird, Assistant U.S. Attorney, New York City, for Defendant.

## MEMORANDUM DECISION

CHIN, District Judge.

Plaintiff Glenn Jones ("Jones") brings this action under section 205(g) of the Social Security Act, as amended (the "Act"), 42 U.S.C. § 405(g), challenging a final determination of the Secretary of Health and Human Services (the "Secretary") that Jones is not entitled to disability insurance benefits under the Act. The parties have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Secretary's determination denying benefits is affirmed.

## I. BACKGROUND

### A. Prior Proceedings

Jones filed an application for disability insurance benefits on March 5, 1992 (Tr. 50–53),[1] alleging disability due to a lower back injury and other impairments. The application was denied initially and on reconsideration. (Tr. 63–65, 68–70). Jones then requested a hearing before an administrative law judge. This request was granted and a hearing was held on May 20, 1993 before Administrative Law Judge Mark Hecht (the "ALJ"), who considered Jones's petition *de novo*. (Tr. 23–49). Jones was represented by counsel at the hearing. On June 8, 1993, the ALJ issued a decision finding that Jones was not disabled under the Act and therefore was not entitled to disability insurance benefits. (Tr. 9–17). This decision became the Secretary's final decision when the Appeals Council denied Jones's request for review on August 26, 1993. (Tr. 4–5). Jones then commenced this action seeking a reversal of the

1. "Tr." refers to the transcript of the administrative record filed by the Secretary as part of her answer.

Secretary's decision or remand for a new hearing.

## B. *Facts*

Jones was born on April 2, 1955 and is a high school graduate with two years of college credit. (Tr. 27, 29). He has worked as a bus operator, street vendor, tow truck operator, census worker and construction worker. (Tr. 30–31). On September 8, 1988, Jones injured his back when the bus he was operating hit a pothole causing the driver's seat to collapse. (Tr. 32). Upon sustaining the injury, he immediately went to Metropolitan Hospital emergency room, where he was told that he had stiffness and swelling, and was then released. (*Id.*).

Jones was next treated for his injuries on September 23, 1988 by Dr. Joseph C. Polifrone. (Tr. 117). In his examination, Dr. Joseph Polifrone found limitation of plaintiff's range of motion of the lumbar spine in all directions, limitation in neck movement, spasm in the paravertebral lumbar muscles, pain on movement of the lumbar spine, absence of right Achilles tendon reflex, right calf atrophy, S1 hypalgesia in both feet, loss of normal lordotic lumbar curve, and positive straight leg raising on the right at 45 degrees. (*Id.*). Dr. Joseph Polifrone conducted follow-up examinations on October 5, November 11, December 9, and December 28, 1988. (Tr. 111–12). During these examinations, Dr. Joseph Polifrone saw signs of S1 radiculopathy, and the doctor's diagnosis was midline disc protrusion or herniation. (Tr. 111). A CT scan performed on January 20, 1989 was inconclusive due to Jones's obesity. (Tr. 116).

Upon referral, Dr. Annarose Polifrone performed a consultative examination upon Jones on December 13, 1988. (Tr. 121–22). This examination revealed a loss of normal lumbar lordotic curve and bilateral paravertebral spasm. (Tr. 121). However, Dr. Annarose Polifrone also noted that Jones had a full active range of motion and good strength in both lower extremities. (*Id.*).

Dr. Joseph Polifrone saw Jones again two years later on August 8, 1990. After that examination, he diagnosed Jones with lumbar radiculopathy which resulted in "permanent partial disability." Dr. Joseph Polifrone indicated that Jones's injury would preclude him from doing his "usual work" at that time. (Tr. 113). On October 16, 1990, in response to a CUNA Mutual Insurance Society questionnaire, Dr. Joseph Polifrone changed his assessment of Jones's diagnosis to "permanently disabled." (Tr. 93–95). In this questionnaire, Dr. Joseph Polifrone stated that Jones was capable of lifting up to ten pounds occasionally, and was able to sit, stand and walk for up to one hour in an eight-hour work day. (Tr. 94).

Two years after this diagnosis, on December 12, 1992, Dr. Joseph Polifrone evaluated Jones again. (Tr. 109–111). At that time, Dr. Joseph Polifrone stated that Jones could lift or carry five pounds, and could sit, stand, or walk for a total of three hours in an eight-hour day. (Tr. 109). According to Dr. Joseph Polifrone, Jones could not perform any postural activities, such as climbing, crouching, or kneeling, and Jones was restricted from humidity and extreme temperatures. (Tr. 110).

Dr. Joseph Polifrone's medical report four months later, on April 28, 1993, stated that Jones had limited movement of the lower back, spasm in the lumbar muscles, S1 hypalgesia of the feet, lack of right Achilles reflex, right calf atrophy, positive straight leg raising at 45 degrees on the right, loss of normal lordotic curve, and neck injury. (Tr. 139–40). He diagnosed Jones with a herniated lumbar disc at the L5–S1 level, S1 radiculopathy and cervical sprain. (Tr. 141–42). Dr. Joseph Polifrone opined that physical therapy and analgesics gave Jones little temporary relief, and that his condition was permanent and precluded him from being gainfully employed. (Tr. 142). In this report, Dr. Joseph Polifrone also stated that EMG studies revealed S1 radiculopathy and that a CAT scan could not rule out a herniated disc due to plaintiff's large size. (Tr. 141).

In addition to Dr. Joseph Polifrone, four other doctors examined Jones subsequent to his back injury. As noted, Dr. Annarose Polifrone saw Jones in 1988, and while her examination was inconclusive, she did report that Jones had full range of motion and good

strength in his lower extremities. (Tr. 121). Dr. Wolchonok examined Jones on behalf of the Worker's Compensation Board on June 5, 1990. (Tr. 114). He indicated that Jones's neck motion was unrestricted and that the cranial nerves were intact. Jones, however, felt discomfort and his neck reflexes were hypo-reflexive bilaterally. (*Id.*). Although Jones could walk on his toes and heels, he felt pain in the mid-thoracic and lumbosacral regions, his back motions were restricted with pain, his reflexes were depressed on the right side, his straight leg raising was positive on both sides, his sensation was decreased to the lower right extremity, and he had calf atrophy. (*Id.*). Dr. Wolchonok diagnosed Jones as permanently partially disabled. (*Id.*).

Jones also received four separate orthopedic examinations from Dr. Robert Swearingen. (Tr. 96–104). On November 15, 1990, Dr. Swearingen found that Jones could flex and extend his neck without pain and it appeared that his biceps and triceps reflexes were present and normal. (Tr. 98). Upon flexing his leg to 45 degrees, claimant reported some pain in the lower right lumbar area but did not complain of pain in the leg. When pressure was applied to the top of Jones's head, he complained of mild back pain. (*Id.*). Dr. Swearingen reported that both of Jones's legs could be extended at the knees while sitting without pain and his reflexes were normal. (Tr. 96, 99). Further, Jones's right big toe did not exhibit the numbness he complained about during the exam; rather, his toe extensors appeared strong on both sides. (Tr. 99). Dr. Swearingen concluded that Jones was not disabled, and that "based on the clinical findings, this man would be expected to be able to operate a bus." (Tr. 100).

In Dr. Swearingen's October 1, 1991 examination of Jones, he again reported that there were no objective medical findings supporting Jones's complaints of back and leg pain. (Tr. 101–04). Dr. Swearingen reported that Jones's gait appeared normal and he stood on his heels with no problem as well as on each foot independently. (Tr. 103). When Jones flexed 45 degrees in his legs, he felt a pulling in his back, but there was no mention of any right leg pain. (*Id.*). Jones had some mild pain with rotation related to the right sacroiliac area, but when seated, straight leg raising remained normal. His knee and ankle reflexes were normal, toe extensors were strong, and numbness was confined to a small area on the medial side of the right big toe. (*Id.*). Dr. Swearingen again concluded that the claimant was not disabled. (Tr. 104).

Jones made intermittent visits to a Health Insurance Plan ("HIP") Center between March 1991 and November 1992 for other medical problems, including hypertension, gout and diabetes mellitus. (Tr. 39–43, 124–37). He was prescribed a cane for walking on March 19, 1991 and was noted to be uncompliant with his medication on April 16, 1991. (Tr. 125, 127). Jones did not go to his January 31, 1992 or February 20, 1992 appointments with the HIP Center.

Jones's final examination before the hearing was with Dr. Daoud Karam on June 20, 1992. (Tr. 105–106). Dr. Karam reported that there was no evidence of spasm, muscle atrophy, or loss of sensory modality in Jones's upper extremities. (Tr. 106). In fact, all reflexes were present and both upper extremities had normal power, control and coordination. (*Id.*). As for his lower extremities, there was also no spasm or muscle atrophy, and muscle power was normal. (Tr. 107). Jones did have pain when moving his back in any direction and a mild spasm upon palpation of his lower back. (Tr. 106). There was no pain upon movement of his hip, knee or ankle joints and toes. (Tr. 106). Dr. Karam reported that Jones had excellent coordination and control of both lower extremities and all sensory modalities were intact. (Tr. 107). Dr. Karam concluded that Jones's ability to do work-related activities was limited by his low back pain which restricted him from lifting or carrying heavy objects, pushing, pulling, and bending. (Tr. 107).

Other background information was adduced at the hearing through Jones's testimony. Jones lives on the second floor of an apartment building with his wife and six children. (Tr. 28–29). He drives his car occasionally, but only for about 5–10 miles

comfortably, and rarely uses the subways or buses. (Tr. 29). Jones does minimal activities outside his home, as he primarily stays in the house, lays in bed, and watches his baby. (Tr. 45).

Jones testified that he has severe pain on a daily basis. To relieve the pain, he received physical therapy until January 1991. (Tr. 34–35). He also takes Motrin and Darvocet to help him sleep and to "get the pain off [his] mind." (Tr. 36). Jones also felt that his condition was worsening because he was not "getting around" as much as before. (Tr. 38).

Jones has not attempted to return to work since his injury in September 1988. (Tr. 37). He testified that he can sit comfortably in a regular position for about 15 minutes and stand for about 20 minutes. (Tr. 43). He said he could walk about 5–10 blocks if necessary and uses a cane to do so. (*Id.*). He believes that he is unable to return to any of his previous work, and he also does not think that he could perform a sedentary job because he cannot sit in a seated position for a long period of time. (Tr. 47–48).

## II. *DISCUSSION*

### A. *Determining Disability*

A claimant is entitled to disability benefits under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be of such severity that the claimant

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

■ The Secretary has promulgated regulations establishing a five-step procedure for evaluating disability claims. 20 C.F.R.

§§ 404.1520, 416.920. The Second Circuit summarized this procedure as follows:

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982); *see also Bowen v. Yuckert*, 482 U.S. 137, 140–42, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987).

The claimant bears the burden of proof with regard to the first four steps; the Secretary bears the burden of proof as to the last step. *Berry*, 675 F.2d at 467.

### B. *Scope of Review*

■ The standard of review in evaluating disability claims is whether the Secretary's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *see also Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir.1983). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citations omitted). Also, the Secretary's failure

to apply proper legal standards or to provide a full and fair hearing are grounds for judicial review. *Berry,* 675 F.2d at 467.

■ Thus, the Secretary's decision is afforded considerable deference; the reviewing court should not "substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon a *de novo* review." *Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (*quoting Valente v. Secretary of Health & Human Servs.,* 733 F.2d 1037, 1041 (2d Cir.1984).

## C. *The Secretary's Determination*

The ALJ complied with each of the five steps enunciated in *Berry.* Ultimately, the ALJ concluded that, although Jones could not return to his past work, he had the residual functional capacity to perform sedentary work. Based on this finding and Jones's age, education, and work experience, the ALJ determined that regulations promulgated by the Secretary directed a conclusion that Jones was not disabled within the meaning of the Act. (Tr. 15). Jones's principal arguments in this appeal are that the ALJ committed legal error by (1) misapplying the treating physician rule and (2) finding that Jones had a residual functional capacity for sedentary work.

### 1. *Treating Physician Rule*

■ Under the treating physician rule, more weight is accorded a treating physician's opinion than a consulting physician's opinion as long as the treating physician's opinion is supported by medical evidence and is not inconsistent with substantial other evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Schisler v. Sullivan,* 3 F.3d 563, 568 (2d Cir.1993). In determining whether a doctor is a treating physician, consideration will be given to the nature of the doctor-patient relationship, including the length of that relationship. *Diaz v. Shalala,* 59 F.3d 307, 313 n. 5 (2d Cir.1995); *Schisler,* 3 F.3d at 568. Opinions of consultative physicians may override those of treating sources only if supported by substantial evidence in the record. *Diaz,* 59 F.3d at 313 n. 5.

■ Here, the ALJ found that the objective medical evidence and the opinions of three consulting physicians provided substantial evidence to override Dr. Joseph Polifrone's opinion that Jones was permanently disabled. Based on my review of the record, this decision is supported by the record. First, it is important to note that the ALJ applied the appropriate legal standard, stating that Dr. Joseph Polifrone's opinion would be accorded binding weight "in the absence of *substantial* contradictory medical evidence." (Tr. 14).

■ Second, there is ample objective medical evidence in the record to support the ALJ's conclusion that Dr. Joseph Polifrone's opinion was not persuasive. Dr. Karam reported that there was no evidence of spasm, muscle atrophy, loss of sensory modality, or loss of muscle power in Jones's upper or lower extremities. (Tr. 106–07). Dr. Karam also noted that Jones could walk and stand up from a chair without any difficulty. (Tr. 106). Similarly, after multiple examinations, Dr. Swearingen was not able to find any objective symptoms supporting Jones's subjective complaints of pain. (Tr. 101). Dr. Swearingen concluded that Jones was not disabled and could be expected to return to his prior work. (Tr. 104). Finally, Dr. Wolchonok found that Jones's neck motion was unrestricted and cranial nerves were intact and concluded that Jones was permanently, but only partially, disabled. (Tr. 114).

These reports from other doctors constitute substantial evidence that is inconsistent with Dr. Joseph Polifrone's conclusion that Jones is permanently disabled. *See* 20 C.F.R. § 404.1527(d)(2); *Schisler,* 3 F.3d at 567. Given this evidence, the ALJ was entitled to reject Dr. Joseph Polifrone's opinion. Accordingly, the ALJ committed no legal error in applying the treating physician rule.

### 2. *Residual Functional Capacity*

■ It is the responsibility of the Secretary to determine a claimant's residual functional capacity. 20 C.F.R. § 404.1527(e)(2). In making this determination, the Secretary refers to physical exertion requirements of various types of employment available in the national economy. 20 C.F.R. § 404.1567.

Here, the ALJ found that Jones had a residual functional capacity to do sedentary work. Under regulations promulgated by the Secretary, sedentary work requires

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

■ Although the ALJ could have made a more specific finding in support of his conclusion that Jones could perform sedentary work, such as stating how many hours in a day Jones could sit, the record contains substantial evidence supporting that conclusion. Specifically, Dr. Swearingen found no objective evidence of a potentially disabling low-back or other musculoskeletal disorder. (Tr. 100–01). Further, Dr. Swearingen's concluded that Jones could resume his prior work as a bus operator plainly supports the ALJ's finding that Jones could perform sedentary work. (Tr. 104). Similarly, with respect to Jones's ability to do work-related activities, Dr. Karam found that Jones was limited only in "lifting or carrying heavy objects, pushing and pulling and bending." (Tr. 107). Dr. Karam also found that Jones had no trouble walking without a cane. (Tr. 106). Also, as noted above, Dr. Wolchonok found that Jones was permanently, but only partially, disabled and that Jones could walk on his toes and heels. (Tr. 114). Finally, Jones testified at the hearing that he could lift up to ten pounds without aggravating his condition. (Tr. 44). In sum, the record contains substantial evidence supporting the ALJ's conclusion that Jones retains the residual functional capacity to perform sedentary work.

### III.  *CONCLUSION*

For the reasons set forth above, Jones's motion for judgment on the pleadings is denied and defendant's cross-motion for judgment on the pleadings is granted. The final determination of the Secretary is affirmed. The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.